UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

        Plaintiff,

    v.

SEONG YEOL LEE and AMERITRUST
CORPORATION,

        Defendants,

and

BEESPOKE CAPITAL, INC., BEESPOKE
CAPITAL, LLC, ALICE MEE-HYANG CHOI,
APRIL SUE-CHANG LEE, and ELAINE
CHOUNG-HEE LEE,

        Relief Defendants.

**Civil Action No.**

---

## **COMPLAINT**

Plaintiff, United States Securities and Exchange Commission ("SEC" or "Commission")

alleges as follows:

## **SUMMARY**

1.     In an ongoing scheme, Connecticut resident Seong Yeol Lee ("Lee") and his

U.S. company Ameritrust Corporation ("Ameritrust") (together, "Defendants") stole millions of

dollars from investors in the Republic of Korea ("Korea").  Since 2019, Lee has recruited at least

2,000 people to invest in Ameritrust, raising at least $20 million.  Lee absconded with at least

$4 million for his personal use.  He also used investor funds to pay recruiters to solicit more

investors.  Ameritrust is a penny stock company that functions largely to fuel Lee's scheme.

2.      Lee and Ameritrust have also defrauded investors who purchased Ameritrust shares in public trading in the U.S. penny stock market.  As a publicly traded company that has registered securities with the Commission, Ameritrust is required to make periodic public filings with the Commission containing financial reports and other information concerning the company's operations.  Lee and Ameritrust made false and misleading statements in public filings, including by overstating Ameritrust's assets by at least $70 billion.

3.      Ameritrust is delinquent in making public filings, having last reported on its financial condition for the quarter ending June 30, 2021.  Lee, however, has continued to solicit investors in Korea with false promises that Ameritrust will soon be listed on a major U.S. stock exchange, namely Nasdaq or the New York Stock Exchange ("NYSE").  The Commission brings this action on an emergency basis to secure investor funds and hold Defendants liable for their violations of the federal securities laws.

## **VIOLATIONS**

4.      By virtue of the conduct alleged herein, Lee and Ameritrust violated Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1), (2), and (3)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. §§240.10b-5(a), (b), and (c)].

## **NATURE OF THE PROCEEDING AND RELIEF SOUGHT**

5.      The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. §77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. §78u(d)(1)].

6.     The Commission seeks emergency preliminary relief, including a temporary restraining order against Defendants as to further violations of the federal securities laws, an order against Defendants soliciting, accepting, or depositing additional funds from investors, an asset freeze against Lee, Ameritrust, and relief defendant entities controlled by Lee to preserve assets necessary to satisfy an eventual judgment against Defendants, and the repatriation of investor funds fraudulently transferred abroad, including to Korea.

7.     The Commission seeks a final judgment: (a) permanently enjoining Defendants from violating the federal securities laws by engaging in transactions, acts, practices, and courses of business of the type alleged in this Complaint; (b) ordering Defendants to disgorge any ill-gotten gains with prejudgment interest thereon, pursuant to Section 21(d)(7) of the Exchange Act [15 U.S.C. §78u(d)(7)]; (c) ordering each Relief Defendant to disgorge all unjust enrichment and/or ill-gotten gains, with prejudgment interest thereon; (d) ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)]; (e) barring Lee from acting as an officer or director of any public company, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; (f) barring Lee from participating in any offering of a penny stock, pursuant to Section 20(g) of the Securities Act [15 U.S.C. §77t(g)] and/or Section 21(d)(6) of the Exchange Act [15 U.S.C. §78u(d)(6)]; and (g) ordering such other and further relief the Court may deem just and proper.

## DEFENDANTS

8.     **Seong Yeol Lee ("Lee")**, age 70, is a Korean national who has resided in Stamford, Connecticut since at least 2020.  He has been Ameritrust's Chairman, Chief Executive Officer, and Chief Financial Officer since April 2020.  Lee was Ameritrust's sole board member from November 2020, when Ameritrust's one other board member resigned, until November

2021, when Lee appointed his daughter to the board.  Lee lived outside of the United States for portions of the period between 2002 and 2020, including a period when he claims to have been a lecturer at a university in Korea on the topics of banking and securities.  Prior to 2002, Lee was a registered representative of a registered broker-dealer in the United States, and held certain brokerage licenses in the United States, all of which are expired.

9.      **Ameritrust Corporation ("Ameritrust")** incorporated in Wyoming in April 2020.  Ameritrust was previously incorporated in Michigan and Georgia, with the prior Ameritrust entities ultimately merging into the Wyoming entity by August 2020.  In August 2020, Ameritrust merged with a publicly traded Nevada company, Gryphon Resources, Inc. ("Gryphon") and the combined entity took the Ameritrust name.  Ameritrust purports to be in the business of acquiring, holding, and developing commercial real estate.  Following its merger with Gryphon, Ameritrust became a publicly traded company that has registered securities with the Commission pursuant to Section 12(g) of the Exchange Act.  Ameritrust has filed certain periodic reports with the Commission, as required by Section 13 of the Exchange Act, but is now delinquent in required periodic filings.  Ameritrust's stock is a "penny stock", meaning it trades at less than $5.00 per share and is not eligible for listing on a national exchange.  Ameritrust's common stock trades on the over-the-counter ("OTC") market under the ticker symbol "ATCC." Since April 2022, Ameritrust stock has been subject to heightened trading restrictions in the OTC market, because it is delinquent in making current information available to the public.

### RELIEF DEFENDANTS

10.     Relief Defendant **Beespoke Capital, Inc. ("Beespoke Inc.")** is a Connecticut corporation.  Lee is the president, secretary, and treasurer of Beespoke Inc.  Its principal place of business is listed as Lee's home address.  Beespoke Inc.'s predecessor entity was Relief Defendant **Beespoke Capital LLC ("Beespoke LLC")**, a Colorado entity registered with the

Commission and the Financial Industry Regulatory Authority ("FINRA") as a broker-dealer from September 2018 to September 2020.  In September 2019, Lee, purportedly acting as Chairman and President of Ameritrust (which at the time was incorporated in Michigan and not publicly traded) entered into an agreement to acquire Beespoke LLC.  In early 2020, Beespoke LLC filed an application with FINRA to continue to operate as a broker-dealer under Lee's new ownership, but the process was not completed and Lee never obtained the required approval from FINRA.  FINRA is a self-regulatory organization that, among other things, administers membership requirements for brokerage firms and their individual registered representatives. Lee subsequently changed Beespoke LLC's domicile from Colorado to Connecticut, and incorporated it as Beespoke Inc.  Lee has maintained bank accounts in the name of Beespoke Inc. that hold investor funds.  Between May 2020 and December 2022, Lee transferred over $3.3 million in investor assets to a Korean bank account in the name of Beespoke LLC.  The payments to Beespoke LLC in Korea were to fund a similarly named entity in Korea that functioned to recruit Ameritrust investors.

11.     **Alice Choi**, age 36, is a resident of Avon, Connecticut.  She is one of Lee's daughters.  Lee provided a cashier's check to Choi for $500,000 dated July 15, 2021, remitted on a Beespoke Inc. bank account, which she deposited in her personal bank account.  On November 22, 2021, Ameritrust announced the appointment of Choi as the second member of Ameritrust's Board of Directors, along with Lee, but Choi did not provide any services in that capacity.

12.     **April Lee**, age 40, is a resident of Torrington, Connecticut.  She is one of Lee's daughters.  April Lee deposited a cashier's check for $650,000 dated July 15, 2021, remitted on a Beespoke Inc. bank account and payable to another family member who endorsed the check to April Lee.  Neither April Lee nor the family member who endorsed the check to her is an employee of, or provided any services to, Ameritrust or Beespoke Inc.

13.     **Elaine Lee**, age 42, is a resident of Ashford, Connecticut.  She is one of Lee's daughters.  Lee provided a cashier's check to Elaine Lee for $100,000 dated August 15, 2022, remitted from a Beespoke Inc. bank account, which Elaine Lee deposited in her personal bank account.  Elaine Lee is not an employee of, and has not provided any services to, Ameritrust or Beespoke Inc.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to Sections 20(d)(1) and 22(a) of the Securities Act [15 U.S.C. §§77t(d)(1) and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§78u(d), 78u(e), 78aa].  Venue lies in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v(a)] and Section 27 of the Exchange Act [15 U.S.C. §78aa].  A substantial portion of the acts, practices, transactions and courses of business alleged in this Complaint occurred within the District of Connecticut.  Lee resides in this district and has directed Ameritrust's corporate activities from this district.

15.     In connection with the transactions, acts, practices, and courses of business alleged in this Complaint, Defendants, directly or indirectly, singly or in concert, made use of the means or instrumentalities of transportation or communication in interstate commerce, or the mails.

## DEFENDANTS' ACTS IN VIOLATION OF THE FEDERAL SECURITIES LAWS

### Lee's Acquisition of a Public Company in March 2020

16.     In March 2020, Lee purchased a controlling interest in Gryphon.  Gryphon was a publicly traded penny stock company.  In its annual report for fiscal year 2019, filed with the Commission, Gryphon reported that it was a shell company with no revenues and that it was seeking a merger partner.

17.     In June 2020, Lee submitted a public filing with the Commission announcing that Gryphon was changing its state of domicile from Nevada to Wyoming through a merger into Ameritrust Corporation in Wyoming.  The filing announced that the combined entity would take the name Ameritrust Corporation.

18.     Since April 2020, Lee has held the titles of Ameritrust's Chairman, Chief Executive Officer, and Chief Financial Officer.  Gryphon had one other board member when Lee purchased the company, but that board member stepped down in November 2020, leaving Lee as sole director.

19.     In November 2021, Ameritrust disclosed in a Commission filing that Lee's daughter Alice Choi had been appointed as a board member.  The filing did not disclose any compensation arrangement for Choi in her role as a board member.  When Ameritrust named Choi to its board, Lee knew her to be lacking in experience or education with respect to corporate management.

20.     Ameritrust has reported that it has a corporate secretary (referred to hereafter as the "corporate secretary"), and it has no other designated executive officers or employees besides Lee.  When Ameritrust named its corporate secretary, Lee knew the corporate secretary to be lacking in experience or education relating to corporate management.  As alleged below, the corporate secretary played a significant role in recruiting Ameritrust investors in Korea.

21.     As a public company with securities registered with the Commission, Ameritrust was required to file quarterly and annual reports with the Commission.  Public companies with securities registered with the Commission are required to file annual reports on Form 10-K and quarterly reports on Form 10-Q.  Forms 10-K include audited financial statements and narratives from management concerning the company's annual performance.  Forms 10-Q include unaudited financial statements that provide shareholders and the public with an update on the

public company's performance throughout the year.  Ameritrust has been delinquent in filing its quarterly and annual reports, but since April 2020 any filings made by Ameritrust with the Commission have been signed by Lee.

22.     Ameritrust last filed a Form 10-Q for the quarter ended June 30, 2021, and it last filed a Form 10-K for its fiscal year ended September 30, 2020 (the "2020 Annual Report"). Public companies that are unable to timely file quarterly or annual reports with the Commission are required to file a "Notification of Late Filing" explaining the reasons why.  Ameritrust has not filed a Notification of Late Filing or any other document indicating the reason for its delinquent quarterly and annual filings or explaining when investors and the Commission might expect those filings.

**Lee's Solicitation of Korean Investors Beginning in 2019**

23.     Between July 2019 and November 2022, bank accounts in the United States in the name of Lee, Ameritrust, and Beespoke Inc. or Beespoke LLC received over $20 million from individuals in Korea who were recruited to invest in Ameritrust.  Ameritrust's stock records reflect approximately 2,000 Korean shareholders, but witnesses in Korea estimate the total number of investors to be closer to 4,000.

24.     Lee and Ameritrust recruited investors via an entity in Korea, also named Beespoke, LLC (hereafter, "Beespoke Korea").  Beespoke Korea operated for the purpose of recruiting Ameritrust investors.  Beespoke Korea recruited investors in Korea through information sessions, email solicitations, and word of mouth.  The individual identified as Ameritrust's corporate secretary was in charge of running Beespoke Korea.

25.     According to an individual who worked at Beespoke Korea during 2022 ("Witness 1"), the company had anywhere from four to eight permanent salaried employees, and approximately ten temporary employees.  Witness 1 describes Beespoke Korea as an investment

bank that recruits investors for Ameritrust.  Witness 1 now understands Ameritrust to be a company on paper only, with no real operations and with a nonsensical balance sheet.

26.     When Lee and his recruiters began soliciting investors in Korea in 2019, Ameritrust was not a company with publicly traded stock.  It became a public company after March 2020 when Lee purchased Gryphon and subsequently merged it with Ameritrust.  In 2019, Ameritrust was a privately held company owned by Lee and organized in Michigan.

27.     Beespoke Korea's recruitment efforts included information sessions at churches.  One such information session took place in July 2019, and was hosted by two individuals who identified themselves as pastors.  According to an individual ("Witness 2") who attended the July 2019 information session, the presenters at the information session offered attendees the opportunity to purchase Ameritrust shares for $1.00 per share.

28.     Witness 2 was recruited to host Ameritrust information sessions shortly after the July 2019 session at the church, and worked as a recruiter until late 2021.  Witness 2 estimates Ameritrust has recruited over 4,000 investors overall through information sessions.  There were many elderly attendees at information sessions hosted by Witness 2.  Similarly, Witness 1 estimates that Ameritrust currently has more than 4,000 shareholders in Korea.  Witness 1 understands that most of the Korean investors had limited income and limited education, and that many of them were elderly.

29.     In Witness 2's experience hosting information sessions, each new investor paid an average of 34 million Korean won (approximately $26,000) for 26,850 Ameritrust shares.  Witness 2 purchased 26,850 shares at $1.00 per share after the July 2019 information session at the church.  In and around July 2019, Ameritrust's bank account received approximately 96 deposits of $26,850 each from Korean investors.  Lee also purported to gift 100,000 shares each to early Ameritrust investors in 2019.

30.     Over time, Ameritrust information sessions hosts, including Witness 2, consistently emphasized: (i) that Lee held professional securities licenses and credentials, and (ii) that Ameritrust would be listed on Nasdaq or NYSE once it raised sufficient capital.

31.     According to Witness 2, the presenters at the July 2019 information session represented that they could guarantee significant investment returns based on inside information that Ameritrust would split its stock to first increase the share price from $1.00 to $10.00 and then from $10.00 to $100.00 per share.

32.     Lee also made false and misleading statements to investors concerning stock splits.  Lee wrote in an October 10, 2019 email that Ameritrust had a stock split in September 2019 and that investors who started with 126,850 shares at $1.00 per share now had 1,268,500 shares with a market capitalization of $12,685,000 ($10.00 per share).[1]  In his October 10, 2019 email, Lee wrote that when Ameritrust goes public, the stock price would be between $30 and $40.  He further wrote that, based on the projected price of $30.00 or $40.00 per share, investors who held 1,268,500 shares would have between $38 million and $50 million.  Lee wrote in his October 10, 2019 email that he had bought land in the United States to build investors luxury homes.  Lee told the investors to not forget the times that they were considered poor.

33.     A stock split generally refers to a transaction by a publicly traded company that increases the number of shares held by existing shareholders, usually reducing the price per share.  A reverse stock split generally refers to a transaction by a publicly traded company to reduce the number of shares held by existing shareholders, usually increasing the price per share. Stock splits and reverse stock splits generally do not impact the overall value of a shareholder's holdings, barring other factors.  In a stock split, the price per share decreases in tandem with the

---

[1]  Written communications cited herein include communications translated from Korean.

increase in issued shares.  In a reverse stock split, the share price increases but the shareholder is

left with fewer shares.  Market capitalization is a method of valuing a company, typically a

publicly traded company, by multiplying the market value of each share by the number of

outstanding shares.  Lee's statements in October 2019 were false and misleading because

Ameritrust was not a public company in 2019, there was no market for its stock, and the

company had no other real value.  Lee's statements were also false and misleading because a

stock split (or reverse stock split) does not increase a shareholder's wealth barring other factors.

34.     In his October 10, 2019 email to investors, when Ameritrust was not yet a

publicly traded company, Lee referenced a "private placement offer" with a price of $1.00 per

share.  Lee also wrote that he had previously promised to list Ameritrust on the "highest level" of

Nasdaq by February 15, 2020.  Later, in a November 2022 letter to investors, Lee admitted that

in the past three years he had promised shareholders that he would list the company on Nasdaq.

35.     In recruiting investors, Witness 2 recalled using a document called a private

placement memorandum.  A private placement memorandum, or "PPM"" is a document used to

disclose information about an investment that is not part of a public offering.  Witness 2 retained

a copy of a PPM with an effective date of July 15, 2019, around the time that Witness 2 attended

an information session at a church.  The PPM is a lengthy securities offering document, written

in English, and was likely meaningless to most of the Korean investors.  The PPM offered

investments in Ameritrust, described as a Michigan corporation formed as a real estate

investment fund, with Lee as fund manager.  The PPM represented that shares were offered

pursuant to Rule 506(b) promulgated under Section 4(a)(2) of the Securities Act, and that their

resale may be restricted.  Rule 506(b) exempts from public registration requirements certain

securities transactions if they do not include any public offering.  Rule 506(b) offerings are

limited to accredited investors meeting minimum income and net worth requirements, or up to

thirty-five unaccredited but financially sophisticated investors.  Ameritrust could not rely on

Rule 506(b) because it offered the shares through general solicitation at information sessions,

and without regard to investor accreditation status.  The PPM identified an investment minimum

of $250,000, an amount far greater than amounts received from investors in Korea.  A securities

issuer relying on Rule 506(b) is also required to file a notice with the Commission on "Form D"

within 15 days after the first sale of securities in the offering.  Ameritrust made no Form D filing

in 2019 or at any other time.  The PPM represented that investment proceeds would be escrowed

with the Bank of New York Mellon.  No investor funds were escrowed with the Bank of New

York Mellon.

36.     While Witness 2 was recruiting investors, Beespoke Korea representatives told

Witness 2 the share price that he should offer to investors on a given day.  According to Witness

2, Ameritrust manipulated its share price by setting the purchase price on any particular day,

such as $3, $4, or $5 per share.  Witness 2 understood that Lee set the daily price.

37.     An October 10, 2019 email from a Beespoke Korea email address, signed by the

person who would later purportedly become Ameritrust's corporate secretary, represented to

investors that trading among shareholders had caused Ameritrust's price to rise "drastically."  It

continued that investors involved in the trading experienced a "once-in-a-lifetime opportunity of

gaining so much money that you wouldn't have been able to gain just by working forever."  The

email represented that "[n]ow you are all billionaires" and "the luckiest people alive."

38.     In October 2020, after Lee merged Ameritrust with the public company Gryphon,

Lee caused Ameritrust to begin issuing shares to Korean investors who had sent money for

investment in 2019.   The share issuances were recorded with Ameritrust's transfer agent in the

United States.  These share issuances were not part of an offering registered with the

Commission, and the shares were therefore not freely tradeable in the U.S. securities market.  On

or about October 27, 2020, a Beespoke Korea email address distributed to investors a message from Lee.  Lee now represented that the investors were in fact not qualified to have purchased Ameritrust shares in a private transaction because they did not meet wealth or income qualifications.  He also wrote that the investors lacked required investment knowledge and were inexperienced.  Lee suggested that he had solved this problem by donating stock to the investors, and this stock was issued with a "proper stock certificate."  Lee represented falsely that the Korean investors now held registered shares that were "legally qualified and listed stock."  Lee further misrepresented to investors that the shares were registered with the American government and organizations, and that the investors had been transformed from poor to rich.  Lee's October 27, 2020 message noted that investors "may be restricted in some trades in America."  In an email sent on or about December 4, 2020, however, Lee wrote that "ATCC stocks were available for trade and to be cashed out on October 20th."  He also wrote on December 4, 2020 that Ameritrust stock had been registered in the over-the-counter market and could be traded like other companies.  Lee's statements were false and misleading.  When Ameritrust issued shares to the Korean investors in October 2020, the shares were restricted because they were issued directly from Ameritrust or Lee, and not part of a securities offering registered with the Commission.  The shares were not freely tradeable in the U.S. securities market at that time.

39.     Even if the shares issued to Korean investors in October 2020 could have been sold in the securities market, the investors held, and continue to hold, a much different investment than what was promised by Lee.  Ameritrust was not a company listed on Nasdaq or NYSE, and it had no realistic prospect of being listed on Nasdaq or NYSE.  While many investors had paid $1.00 per share in the 2019 private offering, Ameritrust's price per share on the over-the-counter market on October 27, 2020 was $0.45 per share.  Lee, however, in his October 27, 2020 email, congratulated investors on now holding purportedly registered shares

and their "success and new wealth, and a brighter future."  Lee and his Ameritrust recruiters have

continued the scheme into early 2023, with the same false promise of wealth when Ameritrust is

listed on Nasdaq or NYSE.

      40.     When investors in Korea sent money to buy shares, the investors did not

understand that their shares would be restricted.  For example, one Korean investor ("Witness

3"), was led to believe that the investor was buying shares of Ameritrust that would be freely

tradeable and that the investor would be able to sell Ameritrust shares.  Witness 3 has said that

Lee continues to promise investors that shares will be unrestricted soon, but that this has not

happened.  According to Witness 2, the former Ameritrust recruiter, investors are angry and

confused about their shares being restricted, and investors are desperate for Lee to fulfill his

promise of making the shares freely tradeable.  According to Witness 2, investors have asked

why Ameritrust is not listed on an exchange or asked why it has been delayed, and Lee has

responded only by threatening to take shares away from ungrateful investors.

      41.     Witness 1 recalls that Beespoke Korea representatives told potential investors that

Ameritrust would be listed on Nasdaq, and that this would cause its stock price to increase,

making investors wealthy.  Witness 2 similarly recalls that, since 2019, Defendant Lee has

continuously represented to investors that he will list Ameritrust on Nasdaq or NYSE.

According to Witness 2, Ameritrust recruiters have represented to investors that listing on a U.S.

stock exchange will assure an increase in the stock price.  Witness 3 also recalls Lee consistently

representing that Ameritrust would be listed on Nasdaq.  In a September 22, 2019 email to

investors, Lee wrote that Ameritrust was going to be listed at the highest level of Nasdaq, and

compared Ameritrust's future value to that of Apple, Inc.

      42.     In November 2022, one of the email accounts used by Beespoke Korea for

investor communications distributed to investors a letter from Lee.  Lee claimed that Ameritrust

"has started to list in the NYSE for listing promotion. If the trade per share consistently maintains [$]5, the company will be listed on NYSE in no time. That means the ATCC would be the first ever company in Korea and China ever to be listed on NYSE. That also comes with investors being able to open an investment account and will be able to trade with no limit." Lee's statements about the NYSE were misleading because they suggested that Ameritrust had initiated a NYSE process for listing.  In fact, at the time of Lee's November 2022 letter (and thereafter), the NYSE had no record of any Ameritrust application for listing.

43.     Lee misled investors by representing that Ameritrust would be listed on Nasdaq or NYSE.  Requirements for a public company to become listed on Nasdaq or NYSE include a minimum stock price of $4.00, well above Ameritrust's stock price.  When Lee sent his November 2022 letter to investors, Ameritrust's stock traded at $0.01 per share.  Nasdaq and NYSE also require companies to be current with required annual reports filed with the Commission on Form 10-K, which Ameritrust is not.

44.     Part of Lee's scheme included encouraging Korean investors to buy and sell Ameritrust shares, ostensibly in the OTC market, to meet price and trading volume requirements for listing on an exchange.  In his November 2022 letter, Lee encouraged investors to purchase more Ameritrust stock through brokerage accounts, and then to engage in trading at increasing prices "during the preparation for listing on the NYSE."  He also made unfounded threats to discourage selling below a target price of $5.00.  He told investors: "Bid trading is bought and sold over [$]5 per share. Refrain from selling less than five dollars per share.  Also, do not sell the share for less than [$]0.25 based on the final price. If caught doing so, you will be accused and charged with illegal action under the Securities and Exchange Act."  Lee also encouraged investors to buy Ameritrust stock at increasing prices over a period of weeks.

45.     Lee falsely told investors that he would arrange for them to open brokerage accounts in the United States for purposes of trading Ameritrust stock.  Lee wrote in the November 2022 letter to investors:  "I will establish a securities firm-investment bank. You should open an investment account from another securities firm first, and then after that, any stock transactions and services must be done through our securities firm.  Even though you have opened an account through a different securities firm, once our securities firm-investment bank is running, you may make transactions through our firm."  This was an apparent reference to Beespoke Inc. or Beespoke LLC, and Lee's statement was false.  Beespoke LLC's continuing membership application with FINRA had lapsed by September 2020, and Lee did not thereafter take any steps to apply for or renew any broker-dealer registration for either Beespoke LLC or Beespoke Inc.

46.     In his November 2022 letter, Lee told investors to stop making complaints about Ameritrust and to keep buying Ameritrust shares.  He wrote:  "I am aware that there are many stockholders that claim the company is a scam and sabotaging the company through rumors and threatening the owners of the company.  What is it that you exactly want?  Don't you want to earn a lot of money and live with successful wealth?"

47.     According to Witness 2, a recent Ameritrust information session in Korea was held on December 14, 2022, with approximately fifty people in attendance, and there are at least 200 people on a waiting list to send money to Lee in the United States because Lee has said he cannot currently deposit money in the United States.  Witness 1 similarly understood that as of early January 2023, Beespoke Korea was continuing to hold Ameritrust information sessions.

48.     In a January 5, 2023 email to investors, a Beespoke Korea representative wrote that "2023 will be new year with a new start with the listing of NYSE."

## Lee's Misappropriation of Investor Funds

49.     Ameritrust reported in its 2020 Annual Report that it had no employees besides Lee and the corporate secretary, and no revenue.  The 2020 Annual Report disclosed that Lee and the corporate secretary received no salary and had no arrangements for executive compensation.  Ameritrust has not otherwise disclosed why millions of dollars of investor funds belonging to the corporation would be transferred to Lee and his family.

50.     According to Witness 2, Lee instructed information session hosts to tell investors that they should not label money transfers as being for investment purposes, because to do so purportedly risked the transfers being flagged for a violation of Korean law.  Instead, Witness 2 and others told investors, per Lee's direction, to indicate on money transfer paperwork that the transfers were for living expenses.  Witness 1 similarly recalls that Beespoke Korea representatives told investors not to indicate that their money transfers were for investment or stock purchases.  Lee did not disclose to investors that portions of their money would be used for Lee's personal purposes, for transfer to his family members, or for his recruiting operation to solicit more investors.  Korean investors, including Witness 3, intended only to make an investment in Ameritrust, and would have wanted to know if Lee instead was using money for his own personal purposes.

51.     Between July 2019 and January 2022, bank accounts that Lee controlled in the name of Ameritrust, or in the name of Ameritrust's privately-held predecessor entities, received approximately $4.9 million from investors in Korea.  Between May 2020 and May 2021, accounts that Lee controlled in the name of Beespoke LLC received approximately $11.5 million from investors in Korea.  In May 2021, Lee opened bank accounts in the name of Beespoke Inc. and transferred into those accounts the balances, totaling approximately $2 million, from Beespoke LLC accounts that Lee closed at the same time.  Thereafter, between June 2021 and

October 2022, the Beespoke Inc. accounts that Lee controlled received $3.1 million more in investor assets from Korea.

52.     Lee did not disclose to the auditor that audited Ameritrust's financial statements for the 2020 Annual Report, nor to any subsequent auditors, that Lee had an account in the name of Beespoke LLC that at the end of its fiscal year 2020 held nearly $10 million from Korean investors.

53.     Between early 2021 and late 2022, Lee transferred approximately $1.9 million to Lee's personal bank accounts from accounts in the name of Ameritrust, Beespoke LLC, and Beespoke Inc.  In addition, between 2019 and 2022, Lee used over $800,000 in investor funds to make charitable donations in his own name.

54.     Lee also transferred at least $1.25 million in investor funds to family members. In July 2021, Lee provided Alice Choi with $500,000 in a cashier's check drawn on a Beespoke Inc. account.  Also in July 2021, Lee provided another family member with a $650,000 cashier check drawn on the same Beespoke Inc. account; that family member then signed the check over to April Lee, who deposited it in her own account.  In August 2022, Lee provided Elaine Lee with $100,000 drawn from the same Beespoke Inc. account.  None of Lee's daughters have provided any services to Ameritrust.

55.     When Lee gave Choi the $500,000, he told her that he wanted to pay off her mortgage so that she could have a nice life.  After Lee learned that Commission staff had issued Choi a subpoena for investigative testimony, he sent her a text message telling her to "state that you borrowed the money for the mortgage payments."  Choi was surprised by the text message because she did not understand the $500,000 to be a loan when Lee gave it to her.

56.     Between May 2020 and November 2022, Lee transferred by wire over $3.3 million from Beespoke LLC and Beespoke Inc. bank accounts in the United States to a bank

account in Korea, with Lee identifying Beespoke LLC as the wire recipient in Korea.  In banking records, Lee identified the purpose of the payments as including $400,000 for an apartment purchase, $1 million for client refunds, and the remainder for office expenses, operating expenses, and salaries.  Ameritrust has not disclosed any employees or operations in Korea, and the wires to a Korean bank were a dissipation of Ameritrust investor assets, including money spent on Beespoke Korea's ongoing recruitment efforts.  Similarly, Lee sent another approximately $460,000 in investor proceeds to eleven individuals in Korea for salary and operating expenses.

### Ameritrust's Failure to File Audited Financial Statements

57.     Ameritrust has not filed required audited financial statements with the Commission since its 2020 Annual Report.  In April 2021, Ameritrust reported the resignation of the auditor that had audited Ameritrust's financial statements contained in the 2020 Annual Report.  Ameritrust also announced that it had retained a successor auditor.  Ameritrust has not publicly reported on its auditor status since April 2021.  The successor auditor in fact performed no services for Ameritrust.

58.     In September 2022, Lee hired a new auditor for Ameritrust's financial statements for fiscal year 2021.  The auditor did not perform any audit work and Lee and Ameritrust terminated the auditor's engagement in January 2023.

59.     Lee falsely claimed in the November 2022 letter to investors that Ameritrust was going through the final audit review for its delinquent quarterly Forms 10-Q and its fiscal-year 2021 annual report.  Lee also represented that Ameritrust's fiscal year 2022 audit was underway.  Lee's statements in the November 2022 letter were false.  As of November 2022, when Lee sent the letter, Ameritrust's new auditor had not received required information from Ameritrust

necessary to perform audit work for fiscal-year 2021.  In addition, the auditor did not agree to perform audit work concerning fiscal-year 2022.

**Defendants' False and Misleading Statements in Commission Filings**

60.     Ameritrust reported in its 2020 Annual Report, filed with the Commission on Form 10-K and signed by Lee, that it had total assets of approximately $4 million, including less than $1 million in real estate assets under development.  Ameritrust thereafter filed quarterly reports for each quarter of its 2021 fiscal year (the quarters ending 12/31/2020, 3/31/2021, and 6/30/2021).  On July 2022, Ameritrust filed amended reports for each 2021 quarter, signed by Lee.  In the amended quarterly reports, Ameritrust reported $70 *billion* in Chinese real estate assets.  Lee knew, however, that Ameritrust had not completed the acquisition of real estate assets purportedly underlying the $70 billion figure.  On January 12, 2023, Ameritrust's then-auditor suggested to Lee that Ameritrust should file with the Commission an interim notice on Form 8-K to inform the public of the unreliability of financial data reported in the amended quarterly reports.  Lee admitted to the auditor that Ameritrust did not hold the reported $70 billion in assets.  Lee fired the auditor on January 18, 2023, and Ameritrust has not filed the notice suggested by the auditor.  By not disclosing material facts concerning the true status of Ameritrust's real estate holdings, Lee and Ameritrust rendered misleading the amended 2021 quarterly reports.

61.     Ameritrust reported in its 2020 Annual Report on Form 10-K, signed by Lee, that it acquired a broker-dealer and was in the process of renewing its regulatory licenses.  This statement was false.  Beespoke LLC's continuing membership application with FINRA had lapsed by September 2020, and Lee did not thereafter take any steps to apply for or renew any broker-dealer registration for either Beespoke LLC or Beespoke Inc.  Ameritrust also reported that Beespoke Inc. was inactive pending the renewal of its regulatory licenses.  Lee, however,

made regular cash transfers to a bank account in Korea in the name of Beespoke LLC, for

purported "operating expenses."  In reality, the payments to Beespoke LLC in Korea were for

Lee's recruiters who found shareholders for Ameritrust.  Between May 2020 and December

2022, Lee transferred over $3.3 million to the account in Korea, of which approximately

$200,000 had been transferred by the 2020 fiscal year end.  Thus, Ameritrust's statement in its

2020 Annual Report that Beespoke was "inactive" either was false or was rendered misleading

because Ameritrust did not report the amount or nature of material operating expenses for

Beespoke Inc. or Beespoke LLC.

62.     Ameritrust reported in its 2020 Annual Report that it had cash assets of

approximately $2.5 million.  This cash balance included certain bank accounts of Beespoke LLC.

Lee, however, did not tell Ameritrust's auditor about a Beespoke LLC account that received

incoming cash from Korean investors, and which had a balance of nearly $10 million as of the

fiscal year end.  Thus, Ameritrust's reported cash balance was materially false or at least

rendered misleading by the material understatement of its cash assets.

## FIRST CLAIM FOR RELIEF
## FRAUD IN THE OFFER OR SALE OF SECURITIES
### Violations of Section 17(a) of the Securities Act [15 U.S.C. 77q(a)]
### (As to Defendants Lee and Ameritrust)

63.     The Commission realleges and incorporates by reference paragraphs 1 through 62

as if fully set forth herein.

64.     By engaging in the acts and conduct alleged above, Lee and Ameritrust directly or

indirectly, in the offer or sale of securities, by use of the means or instruments of transportation

or communication in interstate commerce or by use of the mails, (1) employed devices, schemes,

or artifices to defraud; (2) obtained money or property by means of untrue statements of material

fact or by omitting to state material facts necessary in order to make statements made, in the light

of the circumstances under which they were made, not misleading; and (3) engaged in

transactions, practices or courses of business which operated or would operate as a fraud or

deceit upon the purchasers, in violation of Sections 17(a)(1), (2), and (3) of the Securities Act

[15 U.S.C. § 77q(a)(1), (2), and (3)].

**SECOND CLAIM FOR RELIEF**
**FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**
**[15 U.S.C. § 78q(b), 17 C.F.R. § 240.10b-5]**
**(As to Defendants Lee and Ameritrust)**

65.     The Commission realleges and incorporates by reference paragraphs 1 through 62

as if fully set forth herein.

66.     By engaging in the acts and conduct alleged above, Lee and Ameritrust, directly

or indirectly, in connection with the purchase or sale of securities, by the use of means or

instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities

exchange, (1) employed devices, schemes, or artifices to defraud; (2) made untrue statements of

material fact or omitted to state material facts necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading; and (3) engaged in acts,

practices, or courses of business which operated or would operate as a fraud or deceit upon other

persons, including purchases and sellers of securities, in violation of Section 10(b) of the

Exchange Act [15 U.S.C. § 78j(b)] and subsections (a), (b), and (c) of Rule 10b-5 thereunder [17

C.F.R. § 240.10b-5(a), (b), and (c)].

### THIRD CLAIM FOR RELIEF
**Other Equitable Relief, Including Unjust Enrichment and Constructive Trust**
**(As to Relief Defendants)**

67.     The Commission realleges and incorporates by reference paragraphs 1 through 62 as if fully set forth herein.

68.     Section 21(d)(5) of the Exchange Act states, "In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."

69.     Relief Defendants received ill-gotten funds provided by investors for purposes of investment in Ameritrust.  Relief Defendants have no legitimate claim to this property.  In equity and good conscience, Relief Defendants should not be allowed to retain such funds.

70.     As a result, Relief Defendants are liable for unjust enrichment and should each be required to return their share of ill-gotten gains, in an amount to be determined by the Court. The Court should also impose a constructive trust on the ill-gotten gains in the possession of Relief Defendants.

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

A.      Enter a temporary restraining order and preliminary injunction to: (a) prohibit Lee and Ameritrust from continuing to violate the Securities Act and the Exchange Act; (b) freeze and repatriate assets of Lee, Ameritrust, Beespoke Inc., and Beespoke LLC; and (c) prohibit Lee and Ameritrust from soliciting, accepting, or depositing any monies obtained from actual or prospective investors.

B.      Enter a Final Judgment permanently restraining and enjoining Defendants Lee and Ameritrust, as well as their agents, servants, employees, attorneys, and other persons in active

concert or participation with them, from directly or indirectly engaging in the conduct described above, or in conduct of similar purpose and effect, in violation of:

      1.      Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; and

      2.      Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

C.      Enter a Final Judgment ordering Defendants Lee and Ameritrust to disgorge their ill-gotten gains or unjust enrichment, with prejudgment interest thereon, to effect the remedial purposes of the federal securities laws.

D.      Enter a Final Judgment against each Relief Defendant ordering each of them to disgorge all unjust enrichment and/or ill-gotten gains, with prejudgment interest thereon, to effect the remedial purposes of the federal securities laws.

E.      Enter a Final Judgment ordering Defendants Lee and Ameritrust to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

F.      Enter a Final Judgment barring Lee from acting as an officer or director of any public company, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

G.      Enter a Final Judgment barring Lee from participating in any offering of a penny stock, pursuant to Section 20(g) of the Securities Act [15 U.S.C. §77t(g)] and/or Section 21(d)(6) of the Exchange Act [15 U.S.C. §78u(d)(6)];

H.      Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

I.      Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands a jury trial in this action of all issues so triable under the claims in this Complaint.

Dated: February 1, 2023

Respectfully submitted,

/s *Michael C. Moran*
Michael C. Moran (CT phv08741,
    Mass. Bar No. 666885)
Rua M. Kelly (Mass. Bar No. 643351)
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA  02110
MoranMi@sec.gov
KellyRu@sec.gov
Moran phone:  (617) 573-8931
Kelly phone:   (617) 573-8941
Facsimile:      (617) 573-4590

*Counsel for Plaintiff Securities and Exchange Commission*


Local Counsel:

/s *David C. Nelson*
David C. Nelson
Assistant United States Attorney
United States Attorney's Office
District of Connecticut
157 Church Street
New Haven, CT 06510
(203) 821-3700
David.C.Nelson@usdoj.gov