**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>*Plaintiff*, | ) ) ) ) | Case No. 23-cv-125 (OAW) |
| v. | ) ) | |
| APRIL SUE-CHANG LEE, IN HER CAPACITY AS FIDUCIARY OF THE ESTATE OF SEONG YEOL LEE, AMERITRUST CORPORATION,<br>*Defendant*. | ) ) ) ) ) ) | |
| BEESPOKE CAPITAL, INC., ALICE MEE-HYANG CHOI, APRIL SUE-CHANGE LEE, ELAINE CHOUNG-HEE LEE<br>*Relief Defendant*. | ) ) ) ) ) ) | |

## RULING ON A MOTION FOR ENTRY OF CONSENT JUDGMENTS

**THIS ACTION** is before the court upon Plaintiff United States Securities and Exchange Commission ("the Commission" or "SEC") motion for consent judgments. ECF No. 104. Defendants nor the relief defendants have filed a response; instead, Plaintiff's motion includes, as exhibits, signed forms indicating each party's consent to the entry of final judgment. *See* ECF No. 104-2; 104-4; 104-6; 104-8. The court has reviewed the motion, and the record in this case. For the reasons discussed herein, the motion is **GRANTED**.

## I.   RELEVANT FACTS

This action began with a complaint filed by the SEC. The Commission's complaint alleged that Defendant Seong Yeol Lee had stolen millions of dollars from investors in

Korea, through his U.S.-based corporation, Ameritrust Corporation.  Am. Compl. ¶ 1, ECF No. 66.  The Commission estimates that Lee had recruited over 2,000 people in the scheme, raising at least $20 million.  *See id.*  As part of the scheme, the SEC alleges that Lee filed false and misleading statements about Ameritrust with the Commission, overstating Ameritrust's assets by at least $70 billion.  *See id.* ¶ 2.

### A. Defendants

#### 1. *Seong Yeol Lee*

The SEC alleges that Defendant Seong Yeol Lee had been a resident of Stamford, Connecticut, since at least 2020.  *See id.* ¶ 8.  Lee is alleged to have lived abroad in Korea between 2002 and 2020.  *See id.*  Before 2002, Lee was a registered broker-dealer with the Commission and held other licenses related to securities transactions.  *See id.*

On March 21, 2023, the Commission notified the court that, regrettably, Defendant Lee had passed away on March 7, 2023.  *See* Status Report, ECF No. 20.  After his death, the Commission filed a motion asking the court to substitute Ms. April S. Lee for Mr. Seong Yeol Lee, such that Ms. April Lee may serve as the fiduciary of the estate and the named defendant.  *See* Mot. to Substitute Party, ECF No. 64.  The court granted that motion on November 13, 2023.  *See* Order, ECF No. 65.

#### 2. *Ameritrust Corporation*

The SEC separately alleges that Ameritrust Corporation is a Wyoming entity.  *See* Am. Compl. ¶ 9, ECF No. 66.  The current iteration of Ameritrust Corporation is a result of various mergers.  Previously, Ameritrust had predecessor entities incorporated in Michigan and Georgia.  *See id.*  Those entities merged into the Wyoming entity in August 2020.  Furthermore, in that same month, Ameritrust merged with a separate Nevada

corporation, Gryphon Resources, Inc., to form the Wyoming-based Ameritrust Corporation.  *See id.*  Following the merger with Gryphon Resources, Ameritrust became a publicly traded company.  *See id.*  However, as a "penny stock corporation," Ameritrust was not eligible to be listed on the national exchange.  *Id.*  "Since April 2022, Ameritrust has been subject to heightened trading restrictions in the [over-the-counter] market, because it is delinquent in making current information to the public."  *Id.*

Various filings with the SEC list Seong Yeol Lee as the Chairman, Chief Executive Officer, and Chief Financial Officer of Ameritrust since April 2020.  *See id.* at 3.  Defendant Seong Yeol Lee was listed as Ameritrust's sole board member from November 2020 until November 2021, when Seong Yeol Lee appointed one his daughters—Ms. Alice Mee-Hyang Choi—to the board.  *See id.* ¶¶ 8, 9.

### B. **Relief Defendants**

#### 1. *Beespoke Capital, Inc.*

Beespoke Capital, Inc. is a Connecticut Corporation.  *See id.* ¶ 10.  Its principal place of business is listed as Defendant Seong Yeol Lee's home address.

Beespoke Capital, Inc. had a predecessor entity in Beespoke Capital LLC.  *See id.* at 5.  The LLC entity was registered in Colorado.  *See id.*  The LLC also was registered with the Financial Industry Regulatory Authority ("FINRA") as a broker dealer from September 2018 to September 2020.  *See id.*

The SEC alleges that around September 2019, Ameritrust entered into an agreement to acquire Beespoke Capital LLC.  *See id.*  The LLC filed an application with FINRA to continue operating as a broker-dealer following the acquisition, but Seong Yeol Lee never obtained such approval.  *See id.*  Instead of pursuing the matter any further,

Seong Yeol Lee is alleged to have incorporated Beespoke LLC as Beespoke Capital, Inc. in Connecticut.  *See id.*  The Commission identifies Beespoke LLC as a defunct entity. *See* Status Report 2, ECF No. 62.

The SEC further alleges that Seong Yeol Lee has maintained bank accounts under the Beespoke, Inc. name to hold investor funds.  *See* Compl. ¶ 10, ECF No. 1.  Between May 2020, and December 2022, Seong Yeol Lee is alleged to have transferred over $3.3 million in investor assets to a Korean bank account in the Beespoke LLC name.  *See id.* Pursuant to the Commission's notice of voluntary dismissal, Beespoke Capital was dismissed as a party to the lawsuit.  *See* Notice of Voluntary Dismissal, ECF No. 48.

### 2. *Alice Mee-Hyang Choi*

Ms. Alice Choi is one of Seong Yeol Lee's daughters.  *See* Am. Compl. ¶ 11, ECF No. 66.  Ms. Choi resides in Avon, Connecticut and the SEC alleges that on July 15, 2021, Seong Yeol Lee provided a cashier's check to Ms. Choi in the amount of $500,000.  *See id.*  Ms. Choi is alleged to have deposited that amount into her personal bank account. *See id.*  As noted above, on November 22, 2021, Ms. Choi was appointed as the second member of Ameritrust's board of directors.  *See id.*  However, the Commission alleges that Ms. Choi did not provide any services in her capacity as a board member.  *See id.*

### 3. *April Sue-Chang Lee*

Ms. April Lee is also one of Seong Yeol Lee's daughters and she resides in Torrington, Connecticut.  *See id.* ¶ 12.  Similar to Ms. Alice Choi, the Commission alleges that Ms. April Lee received a cashier's check in the amount of $650,000, which was "remitted on a Beespoke, Inc. bank account."  *Id.*  Although the check was made payable

to another family member, said family member endorsed the check for Ms. April Lee.  *See id.*  Ms. April Lee is alleged to have deposited this check.  *See id.*

Ms. April Lee, nor the other family member who had endorsed the check, is an employee of Ameritrust or Beespoke, Inc.  *See id.*

### 4. Elaine Choung-Hee Lee

Ms. Elaine Lee is also one of Seong Yeol Lee's daughters and she resides in Ashford, Connecticut.  *See id.* ¶ 13.  The SEC alleges that Ms. Elaine Lee also received a cashier's check from Seong Yeol Lee on August 15, 2022, in this instance, in the amount of $100,000.  *See id.* This cashier's check was also remitted from the Beespoke, Inc. bank account and Ms. Elaine Lee is alleged to have deposited this check into her personal bank account.  *See id.*

Ms. Elaine Lee, like Ms. April Lee, has not been an employee or Ameritrust or Beespoke, Inc. *See id.*

### C. **Alleged Conduct**

The Commission's description of the offending conduct begins in July 2019, when bank accounts—opened in the name of Seong Yeol Lee, Ameritrust, and Beespoke—started to receive what would ultimately amount to over $20 million from investors in Korea.  *See Id.* ¶ 23.  This sum of money is alleged to reflect investments from anywhere between 2,000 to 4,000 Korean shareholders.[1]  *See id.*

The Commission alleges that Seong Yeol Lee had solicited and recruited investors from Korea through a Korean counterpart to Beespoke LLC, which also was named

---

[1] According to the SEC, Ameritrust's own internal records suggest that the $20 million originated from approximately 2,000 shareholders, while a separate witness from Korea estimates that around 4,000 shareholders.  See Am. Compl. ¶ 23, ECF No. 66.

Beespoke LLC ("Beespoke Korea").  *See id.* ¶ 24.  An individual who later was listed as the corporate secretary of Ameritrust, *see id.* ¶ 20, was responsible for overseeing the operations of Beespoke Korea, *see id.* ¶ 24.  One witness, a former employee at Beespoke Korea, stated that there were between four and eight permanent salaried employees with the entity, which had marketed itself as an "investment bank that recruits investors for Ameritrust."  *Id.* ¶ 25.  The complaint suggests that it was only later did employees discover that Ameritrust was "company on paper only."  *Id.*

Seong Yeol Lee and other unnamed individuals started soliciting investors for Ameritrust even before the entity was listed as a public company.  *See id.* ¶ 26 (noting that in 2019, when solicitation efforts began, Ameritrust was a private entity registered in Michigan).  Seong Yeol Lee and other individuals would hold "information sessions" across churches, targeting elderly attendees who were of limited income and education.  *See id.* ¶ 28.  These information sessions emphasized Seong Yeol Lee's credentials and promised that Ameritrust would be listed on the national exchange once it gathered sufficient capital.  *See id.* ¶¶ 29, 30.  Through emails to his investors, Seong Yeol Lee continued to make false promises of the projected valuation of these shares.  *See id.* ¶¶ 31, 32 (alleging that, among others, Seong Yeol Lee claimed that the value of shares would grow tenfold through stock splits).  Potential investors were coaxed with mechanisms such as "private placement memorandums" or "PPMs" which promised lucrative stock opportunities which were not available to the general public.  *See id.* ¶ 35.

Concurrent to his efforts in Korea, Seong Yeol Lee purchased a controlling interest in Gryphon Resources in March 2020.[2]  *See id.* ¶ 16.

---

[2] The reports filed with the Commission for fiscal year 2019 stated that Gryphon had earned no revenue for the year, and sought a merger partner.  *See id.* ¶ 16.

Thereafter, in June 2020, Seong Yeol Lee filed a public notice with the Commission, indicating that Gryphon was changing its state of domicile from Nevada to Wyoming through a merger with Ameritrust Corporation in Wyoming.  *See id.* ¶ 17.  Since April 2020, Seong Yeol Lee has been listed at the chairman, CEO, and CFO of Ameritrust. *See id.* ¶ 18.  Gryphon allegedly had one other board member, who stepped down in November 2020, upon Ameritrust's acquisition of Gryphon.  *See id.*  This meant that Seong Yeol Lee was the only director on the board of both Ameritrust and Gryphon.[3]  *See id.* ¶ 19.  Aside from its directors, Ameritrust reported that the only other employee was the corporate secretary.  *See id.* ¶ 20 (noting that this corporate secretary was the individual responsible for overseeing Beespoke Korea).  There were no other executives or employees reported to the Commission.

Once the merger between Gryphon and Ameritrust was completed in October 2020, Seong Yeol Lee began issuing shares to the mostly elderly, church-going investors in Korea.  *See id.* ¶ 38.  Although the issuance of these shares was recorded with Ameritrust's transfer agent in the U.S., they were not so registered as an offering with the Commission and therefore could not be traded freely in the U.S. market.  *See id.*  Despite these limitations, Seong Yeol Lee is alleged to have represented these shares to be of great value to his investors.  *See id.* ¶¶ 39, 40 (noting that these shares could not be freely traded, and that they lacked the value that Seong Yeol Lee claimed that they had). Seong Yeol Lee went so far as to instruct his investors not to declare their investments

---

[3] This was the case until November 2021, when Ameritrust declared with the Commission that Ms. Alice Choi would be appointed as one of its own board members. *See id.* ¶ 19.  The public filing made no mention of Ms. Alice Choi's compensation for taking on this position.  *See id.*  The SEC further alleges that, in appointing Ms. Alice Choi to this position, Seong Yeol Lee knew that she had no relevant experience or education.  *See id.*

as what they were, but instead to list them as "living expenses," to avoid detection in Korea. *See id.* ¶ 50.

Although these shares would never be traded freely nor attain the value that was once promised, Seong Yeol Lee was alleged to have been misleading his investors even at the time of the filing of the complaint. *See id.* ¶¶ 41–43, 48.

The money from these investors were not declared to the Commission. *See id.* ¶¶ 49, 52 (alleging that Ameritrust had indicated that Seong Yeol Lee and corporate secretary received no salary or compensation). Instead, once investor funds were deposited into various accounts associated with Ameritrust and Beespoke, *see id.* ¶ 51, Seong Yeol Lee expended more than $800,000 in "charitable donations" under his own name, *id.* ¶ 53, and transferred at least $1.25 million to his immediate family members, *see id.* ¶ 54. Other sums of investor funds were used for personal expenses, such as apartment purchases, or were identified as "client funds" or "operating expenses." *Id.* ¶ 56. The funds would be wired between bank accounts in Korea and the United States. *See id.*

Closing the loop, the SEC claims that Ameritrust has been delinquent in timely filing annual reports on Form 10-K, and quarterly reports on Form 10-Q for an unspecified period of time. *See id.* ¶¶ 21, 57. This partially was rectified around April 2020, when Ameritrust filed some or all of these reports, bearing Seong Yeol Lee's signature. *See id.* However, Ameritrust stopped filing Forms10-Q beyond the fiscal quarter ending on June 30, 2021, and it also stopped filing Forms 10-K beyond the fiscal year which ended on September 30, 2020. *See id.* ¶ 22. Ameritrust has not filed any Notification of Late Filing to address or to explain its lack of submissions. *See id.* Nor has Ameritrust declared a

successor auditor since its previous auditor resigned in April 2021.  *See id.* at ¶ 57. Ameritrust, through Seong Yeol Lee, persistently has made false representations about audits, and has not gone through an audit since the previous auditor resigned in 2021. *See id.* ¶¶ 57, 59.

Previous filings with the SEC included inflated assets and misrepresentations regarding Beespoke LLC's FINRA membership, among many others.  *See id.* ¶ 60, 61.

## II.   <u>PROCEDURAL HISTORY</u>

The Commission originally brought three claims: 1) fraud in the offer or sale of securities against Defendants Seong Yeol Lee and Ameritrust, 15 U.S.C. § 77q(a); 2) fraud in connection with the purchase or sale or securities against Defendants Seong Yeol Lee and Ameritrust, 15 U.S.C. § 78q(b), 17 C.F.R. § 240.10b-5; and 3) other equitable relief, under theories of unjust enrichment and constructive trust, against Relief Defendants Beespoke Capital, Alice Choi, April Lee, and Elaine Lee.  *See* Compl. 21–23, ECF No. 1.

The Commission states that the claims on the merits against corporate entities have been "resolved in full."  Status Report 2, ECF No. 62.  This is because on September 6, 2023, the court (*Hon. Janet Bond Arterton, J.*) granted the Commission's motion for default judgment against Ameritrust and Beespoke, Inc.  ECF No. 57.  Separately, the Commission moved to dismiss all claims against Beespoke LLC, which it has identified to be a defunct entity.  *See* Status Report 2, ECF No. 62.

As for the individual defendants, the Commission notified the court that Defendant Seong Yeol Lee died on March 7, 2023.  *See* Status Report, ECF No. 20.  Since his death, the Commission filed a motion to substitute the deceased with Ms. April Lee, who

would serve in her capacity as the fiduciary of the estate of the deceased.  *See* Mot. to Substitute Party, ECF No. 64.  The court granted that motion on November 13, 2023. *See* Order, ECF No. 65.

Since April 28, 2023, assets of the estate of Seong Yeol Lee have been frozen pursuant to the court's order to that effect.  *See* Order, ECF No. 39.  This order was extended once on June 30, 2023, *see* Order, ECF No. 54, once more on September 22, 2023, *see* Order, ECF No. 63, and one additional time on March 25, 2024, *see* Order, ECF No. 97.  Although the assets remain frozen, the Commission claims to have taken steps to prepare for the distribution of these assets to the harmed investors.  *See* Status Report 2, ECF No. 81.  To this end, the court has granted the Commission's motion for appointment of tax administrator.  *See* Order, ECF No. 74.

Following a status conference on March 26, 2024, *see* Minute Entry, ECF No. 98, during which the parties suggested that they were working towards a resolution outside of trial, the Commission filed this motion for entry of consent judgment, *see generally* Pl.'s Mot. for Entry of Consent J. 1, ECF No. 104 ("Mot. for Entry of Consent J.").  In a status report filed alongside the motion, the Commission indicated that it plans to "file post-judgment motions related to the distribution of funds to harmed investors."  Status Report 1, ECF No. 103.

III.  **LEGAL STANDARD**

"The proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the 'public interest would not be disserved,' in the event that the consent decree includes injunctive

relief." *U.S.S.E.C. v. Citigroup Glob. Mkts, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014) (quoting *eBay, Inc. v. MecExchange*, 547 U.S. 388, 391 (2006)).

In reviewing whether a consent decree is fair, adequate, and reasonable, the court must "eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *United States v. Hooker Chemicals & Plastics Corp.*, 540 F. Supp. 1067, 1072 (W.D.N.Y. 1982) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)).

Moreover, "[a]bsent a substantial basis in the record for concluding that the proposed consent decree does not meet these requirements, the district court is required to enter the order." *Citigroup Glob. Mkts, Inc.*, 752 F.3d at 294.  A district court only "has the power to enter or reject such a [consent] judgment, not to alter it.  *United States v. N.Y.C. Hous. Auth.*, 347 F. Supp. 3d 182, 197 (S.D.N.Y. 2018) (citing *S.E.C. v. Petro-Suisse Ltd.*, No. 12 Civ. 6221 (AJN), 2013 WL 5348595, at *3 (S.D.N.Y. Sept. 25, 2013)). This degree of deference reflects the court's recognition of "the S.E.C.'s discretionary authority to settle on a particular set of terms," *Citigroup Glob. Mkts, Inc.*, 752 F.3d at 295, as well "a strong judicial policy in favor of settlements," *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

## IV.    DISCUSSION

"A court evaluating a proposed S.E.C. consent decree for fairness and reasonableness should, at a minimum, assess (1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and

(4) whether the consent decree is tainted by improper collusion or corruption of some kind." *Citigroup Glob. Mkts., Inc.*, 752 F.3d at 294–95.  As none of the consent judgments seek injunctive relief, *see* Mot. for Entry of Consent J. 1, the court need not analyze any public interest implications.  *See Citigroup Glob. Mkts, Inc.*, 752 F.3d at 294.

The proposed consent decree satisfies all four elements.

First, "[a] proposed consent decree with the [g]overnment is legal 'so long as it is within the [c]ourt's authority to enter the decree and within the Plaintiff's authority to enforce it.'"  *S.E.C. v. Caledonian Bank Ltd.*, 317 F.R.D. 358, 370 (S.D.N.Y. 2016) (quoting *United States v. Int'l Bus. Machs. Corp.*, No. 14-cv-936, 2014 WL 3057960, at *1 (S.D.N.Y. July 7, 2014)).  Essentially, the consent judgments against all Defendants and Relief Defendants seeks disgorgement of ill-gotten funds.  It is clear that the SEC may seek to enforce securities regulation through disgorgement.  *See Liu v. S.E.C.*, 591 U.S. 71, 75 (2020) (citing 15 U.S.C. § 77a *et seq.*)  Likewise, it is clear that the court has the authority to grant "equitable relief that may be appropriate or necessary for the benefit of investors."  15 U.S.C. § 78u(d)(5).

Second, the proposed judgment is clear, as it leaves "no uncertainty in the minds of those to whom it is addressed."  *Su v. Cmty. Health Ctr. of Richmond, Inc.*, No. 21-cv-3094(ARR)(TAM), 2024 WL 333625, at *2 (E.D.N.Y. Jan. 8, 2024) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).  The consent judgments clarify how much each Defendant and Relief Defendant must pay, and the procedures for effectuating payment.  *See id.* (citing *Acosta v. Bratcher*, 343 F. Supp. 3d 108, 112 (W.D.N.Y. 2018)).  Each party, represented by legal counsel, has signed a consent form to indicate their full

understanding of their respective consent judgments, which further supports finding that the second element has been satisfied.  *See* Mot. for Entry of Consent J. 1.

Third, the resolution reflects the resolution of the claims in the amended complaint. *See generally* Am. Compl., ECF No. 66.  In its amended complaint, the SEC sought multiple forms of relief, notably injunctive relief against now-deceased Seong Yeol Lee, disgorgement of all unjust enrichment as well as ill-gotten gains, and civil penalties.  *See id.* at 23–25.  Through the consent judgments, Defendants and Relief Defendants all have agreed to disgorge a certain amount of money.  Although the Commission no longer seeks civil penalties or injunctive relief against the parties, the court is mindful "of the [Commission's] discretionary authority to settle on a particular set of terms," *Citigroup Glob. Mkts, Inc.*, 752 F.3d at 295, especially in light of Seong Yeol Lee's death during the pendency of this action, *see* Mot. for Entry of Consent J. 2.

Finally, the court finds that there is no substantial basis to find that the consent decree is tainted by improper collusion or corruption.  *See id.* 294.  Not only has the Commission alleged that it is the result of "good faith and arms-length negotiations," but a United States Magistrate Judge presided over at least one of the settlement conferences. Mot. for Entry of Consent J. 1.  Furthermore, the undersigned presided over a conference hearing, during which the Commission and the parties confirmed their commitment to good-faith resolution of the matter.  *See* Minute Entry, ECF No. 98.

13

## V.    <u>**CONCLUSION**</u>

Accordingly, it is thereupon **ORDERED AND ADJUDGED** that Plaintiff's motion for entry of consent judgment hereby is <u>**GRANTED.**</u>  For clarity of the record, final judgment as to each Defendant and Relief Defendant shall be filed as a separate entry.


**IT IS SO ORDERED** at Hartford, Connecticut, this 12th day of September, 2024.


_____/s/_____

OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE

14